IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Angela Burris Priest, ) | |
| ) | Civil Action No. 8:15-2548-TMC-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| The City of Abbeville, The City of ) | |
| Abbeville Police Department, ) | |
| Chief of Police Neil Henderson, ) | |
| and David McCuen, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the defendants' motions for summary judgment (docs. 45, 46). In her amended complaint, the plaintiff alleges causes of action for sexual harassment; gender/sexual discrimination; breach of contract; negligence; intentional infliction of emotional distress/outrage; retaliation; negligent supervision, negligent retention, negligent infliction of severe emotional distress; wanton and willful negligence; and wrongful termination/constructive termination (doc. 24). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

Defendants City of Abbeville, City of Abbeville Police Department, and David McCuen ("City defendants") filed a motion for summary judgment on July 7, 2016 (doc. 45). Defendant Neil Henderson filed a motion for summary judgment on July 8, 2016 (doc. 46). The plaintiff filed a response in opposition the City defendants' motion on August 15, 2006 (doc. 53 ) but did not file a response to defendant Henderson's motion.[1]

---

[1] The plaintiff does reference Henderson's motion in her response to the City defendants' motion (doc. 53-1, p. 7).

**FACTS PRESENTED**

The plaintiff began working for the defendant City of Abbeville in 1993 as a dispatcher. She subsequently became the City's Clerk of Court when the dispatch department was eliminated. She stayed in that position until 2007 when, at her request, the City paid for her to become credentialed as a police officer (doc. 45-2, pl. dep. 17-18).

Until February 12, 2013, the defendant City of Abbeville Police Department was headed by Chief Neil Henderson. Henderson approved the plaintiff's training and hiring as a police officer and, over the years, promoted her to Corporal and then Sergeant (doc. 45-3). According to the plaintiff's first Equal Employment Opportunity Commission ("EEOC") charge of discrimination, from 2009 until Henderson's resignation, Henderson sexually harassed her by touching her, kissing her in September 2012, and questioning her about her relationships with other men (doc. 45-4, p. 3).

According to the allegations in the amended complaint, the plaintiff reported Henderson's conduct to Assistant City Manager Ashley Ramey on August 27, 2009 (doc. 24, pp. 4-5; *see* doc. 53-3). The plaintiff complained that Henderson was pressuring her to end a relationship with Brian Weaghinton, who had been arrested by the City Police Department in the past (doc. 24, pp. 4-5; *see* doc. 45-1, p. 3). Ramey offered to speak with Henderson about the matter, but the plaintiff did not want her to since she thought it would make the situation worse (doc. 53-3). The next day, the plaintiff returned to Ramey's office and informed her that she was going to speak with Henderson and her immediate supervisor, Mike Eaton, about the situation. Again, she declined Ramey's offer to go with her (*id.*). According to the plaintiff, she spoke to Ramey again in February 2010 and explained that things were about the same with regard to Henderson's conduct towards her (doc. 53-12, pl. aff. ¶ 8).

The plaintiff's next complaint to the City about Henderson occurred in February 2013. The plaintiff testified that this complaint was prompted by a threat from Henderson to have Bill Priest (whom she was then dating) investigated for allegedly making threatening remarks (doc. 45-2, pl. dep. 115-21). David McCuen had just recently (January

2

1, 2013) become the City Manager. McCuen met with the plaintiff on February 10, 2013, to discuss her complaints, and he took extensive notes (doc. 45-5). Those notes show that the plaintiff complained again that Henderson pressured her to end a relationship with Brian Weaghinton. She then alleged that Henderson pressured her to end her relationship with Bill Priest and criticized her unfairly regarding her supervision of employees. She also complained Henderson became unduly upset with her regarding a uniform jacket she wanted, that Henderson was ignoring her, and that he was making comments and texting her about investigating Bill Priest or reporting him to Homeland Security (*id.*). Nothing in the notes indicates that Henderson was making sexual advances toward her (*id.*). According to the notes, McCuen asked the plaintiff if her relationship with Henderson was strictly employer/employee, and the plaintiff confirmed it was (*id.*, p.6).

Following this meeting, McCuen undertook an investigation. However, immediately upon asking Henderson for his version of events, Henderson chose to resign his employment on February 12, 2013 (doc. 45-6).

The plaintiff took administrative leave immediately following her February complaint and returned to work on February 28. When she returned, Henderson was already gone (doc. 45-2, pl. dep. 122). Upon her return to work, the City offered, and the plaintiff accepted, counseling with a mental health provider (*id.* 123).

On June 13, 2013, the plaintiff filed her first charge of discrimination alleging that Henderson sexually harassed her from April 1, 2009, to February 28, 2013 (doc. 45-4, p. 3). The EEOC issued a right to sue letter to the plaintiff on December 13, 2013 (doc. 46-7).

On June 16, 2013, the plaintiff suffered an on-the job-injury while pursuing a suspect (doc. 45-2, pl. dep. 124). According to the defendants, the plaintiff was out of work

due to her back injury for a couple of weeks and then returned to light duty (doc. 45-1, p. 4).[2]

In mid-June 2013, the City hired Mark Hall as the new Chief of Police. While the plaintiff was on light duty, Chief Hall reorganized the Department (doc. 45-2, pl. dep. 141). As part of this process, in September 2013, the Department announced openings for a Lieutenant of Investigations and Lieutenant of Patrol. The plaintiff applied for these positions. As part of the process, all candidates were interviewed and reviewed by a board of law enforcement officials who did not work for the City of Abbeville. The board graded each applicant by a number of factors and scored them on evaluation forms (doc. 57-3). As those score sheets show, the plaintiff scored the second-lowest of any candidate. She scored a total of 51 points compared to 62, 52, 50, and 55 (*id.*). As one of the two lowest scoring candidates, she was not offered a promotion (doc. 45-7, Hall aff. ¶ 5). According to the plaintiff, the Lieutenant of Patrol positions went to John Garner and Michael Eaton, and the Lieutenant of Investigations position went to Christopher Wilkie (doc. 53-12, pl. aff. ¶ 27). Each of these individuals scored higher than the plaintiff before the interview board (doc. 57-3).

According to the defendants, the plaintiff did not return to work after May 8, 2014 (doc. 45-1, p. 4). After the plaintiff's Family and Medical Leave Act ("FMLA") leave and accrued paid leave expired, the City granted her unpaid non-FMLA leave, which was extended several times (doc. 45-9).

Another Lieutenant position came open in July 2014. At the time, the plaintiff was out on medical leave.[3] Nevertheless, she applied for the opening. The same process was used with an independent board. This time, the plaintiff had the lowest score, 74,

---

[2]The pages of the plaintiff's deposition cited by the defendants are not included in the defendants' filings (doc. 45-1, p. 4; *see* doc. 45-2, pl. dep.).

[3]The plaintiff states that she was on medical leave "as a result of the harassment and discrimination suffered at the hands of Henderson and the Department" (doc. 53-12, pl. aff. ¶ 31).

compared to 95, 103, 94, and 83 scored by the other candidates (doc. 57-3). As a consequence, she was not selected for the position (doc. 45-7, Hall aff. ¶ 7). Ryan Davis, who scored 103, was given the position (doc. 57-4, p. 23).

The plaintiff filed a new charge of discrimination on July 7, 2014, alleging she was denied the 2013 promotions for the Lieutenant of Investigations and Lieutenant of Patrol positions in retaliation for her previous EEOC complaint (doc. 53-7). She also alleged sexual harassment from March 1, 2013, through April 23, 2014, stating she had been subjected to a hostile work environment by her male co-workers and Chief Hall (*id.*). Her amended complaint, however, contains no allegations of harassment by Chief Mark Hall or anyone else other than Henderson. He is only mentioned in the context of the promotion decisions (*see* doc. 24). According to the defendants, the EEOC issued a right to sue letter on the July charge in May 2015.

The plaintiff filed an amended charge of discrimination on September 30, 2014, again alleging that she was denied the 2013 promotions based upon her previous EEOC charge (doc. 53-8). She also made the same sexual harassment allegations for the time period from March 1, 2013, through April 23, 2014, as in the July charge (*id.*). In addition, the plaintiff alleged that she was denied a promotion to Patrol Lieutenant in July 2014 in retaliation for filing her previous EEOC charge (*id.*). The plaintiff states that she filed another charge on October 6, 2014 (doc. 53-1, p. 6). However, the exhibit referenced by the plaintiff contains only a notice of charge of discrimination that is dated October 6, 2014, and no copy of another actual charge of discrimination (doc. 53-9). A right to sue letter was issued on May 12, 2015 (doc. 53-10). The charge number referenced in the right to sue letter is the same as that on the September 30, 2014, amended charge (*id.*; *see* doc. 53-8).

According to the defendants, in November 2014, the plaintiff applied for disability retirement with the South Carolina Police Retirement System. This was awarded in January 2015, at which time she requested that the City separate her from employment (as required by the Retirement System). The City therefore separated the plaintiff from

5

employment at her request so she could begin receiving disability retirement benefits (doc. 45-1, p. 6).[4] According to the plaintiff, she was contacted by the Department in November 2014 and was told to return all department-issued items. She called the South Carolina Criminal Justice Academy and was told that her certification status had been pulled. She was also told that Chief Hall had signed her "separation papers from the academy dated October 31, 2014." She states that her employment officially ended on March 3, 2015 (doc. 53-12, pl. aff. ¶¶ 31-33).

This action was commenced in state court on May 22, 2015, and was removed to federal court on June 25, 2015 (docs. 1, 1-1).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific,

---

[4] The pages of the plaintiff's deposition cited by the defendants are not included in the defendants' filings (doc. 45-1, p. 6; *see* doc. 45-2, pl. dep.).

material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

***Title VII Hostile Work Environment***

In her first cause of action, the plaintiff alleges sexual harassment – or hostile work environment – in violation of Title VII of the Civil Rights Act of 1964, as amended, based upon Henderson's conduct (doc. 24, p. 16). As stated above, she filed a charge of discrimination regarding harassment by Henderson in June 2013, and the EEOC issued a right to sue letter on December 13, 2013 (docs. 45-4, pp. 3; doc. 46-7). Title VII requires that an action be filed within 90 days of the receipt of the right to sue letter. 42 U.S.C. § 2000e-5(f)(1). Receipt is presumed within three days, and the Supreme Court has made clear that "procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1,152 (1984). This lawsuit was not filed until May 22, 2015, well beyond the 90-day period. Accordingly, the defendants argue that the plaintiff's sexual harassment claim is untimely.

The plaintiff argues in response that her amended EEOC charges were based upon a continuing violation theory, and the amended charges restarted the 90-day time period for filing a lawsuit each time one was filed (doc. 53-1, pp. 5-6). She contends that because the final right to sue letter was issued on May 12, 2015, and the lawsuit was filed just ten days later, the claim is timely (*id.*).

The plaintiff's arguments are meritless. The Fourth Circuit Court of Appeals has described the continuing violation theory as follows:

7

> "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice,'" and the Supreme Court has held that such claims are subject to a "continuing violation" theory: "In determining whether an actionable hostile work environment claim exists, we look to 'all the circumstances,'" and "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."

*Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 221, 222 (2016) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116–17 (2002)).

First, as argued by the defendants, the continuing violation theory applies to the charge filing period, not the limitations period for filing a lawsuit. *Morgan*, 536 U.S. at 118 ("Given, therefore, that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment."). Furthermore, even if the continuing violation theory applied, the harassment alleged in the plaintiff's later charges would not have been part of a continuing violation and are completing unrelated to the actual allegations in her amended complaint. The plaintiff alleges in her first cause of action in the amended complaint that she "was constantly and continuously subjected to the unwanted advances, gender based comments, unwelcome touching, and gender based demands of her supervisor, Defendant Henderson" (doc. 24, p. 16). No discriminatory, harassing, or otherwise hostile conduct by any other person is alleged in the claim (*id.*). The only charge in which the plaintiff alleged such conduct by Henderson was the charge filed in June 2013, for which the EEOC issued a right to sue letter on December 13, 2013 (doc. 45-4, p. 3; doc. 46-7). The plaintiff's subsequent charges of discrimination do not allege any further sexual harassment by Henderson. Rather, the plaintiff's second charge of discrimination, filed in July 2014 and amended in September 2014, alleges sexual harassment by Chief Hall and unnamed co-workers from March 2013 through April 2014 (docs. 53-7, 53-8). It is undisputed that Henderson no

8

longer worked for the City after February 2013. Thus, no "act contributing to the claim" occurred within the filing period for those charges. Moreover, as argued by the defendants, courts have refused to allow plaintiffs to resurrect time-barred allegations in the manner the plaintiff seeks. *See, e.g., Thomas v. SunTrust Mort., Inc*., C.A. No. 1:13-cv-428, 2014 WL 198714, at *4 (E.D. Va. Jan. 15, 2014) (finding that the plaintiff's second charge of discrimination realleging events described in first charge of discrimination did not reset the limitations period for filing lawsuit).

Based upon the foregoing, summary judgment should be granted on the plaintiff's first cause of action for sexual harassment.

### *Title VII Failure to Promote and Retaliation*

The plaintiff's second cause of action alleges discrimination in violation of Title VII with respect to the promotions in September 2013 and June 2014, and her sixth cause of action alleges she was denied these same positions in retaliation for filing a charge of discrimination (doc. 24, pp. 16-17, 20). The defendants are entitled to summary judgment on both causes of action.

A plaintiff may avoid summary judgment on a discrimination claim under Title VII through two avenues of proof: y "presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision," or by relying on the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting framework. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir.2005) (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc*., 354 F.3d 277, 285 (4th Cir.2004), recognized as abrogated on other grounds*, Foster v. Univ. of Md.–E. Shore*, 787 F.3d 243 (4th Cir. 2015)).

Here, the plaintiff is proceeding under the *McDonnell Douglas* framework, under which a plaintiff must first establish a *prima facie* case. *Hill*, 354 F.3d at 285. he burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action taken against the plaintiff. *Id*. nce the employer meets this burden, "the *McDonnell Douglas* framework – with its presumptions and burdens –

disappear[s], and the sole remaining issue [is] discrimination *vel non*." *Id*. (alterations in original) (quoting *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142–43 (2000)). The plaintiff must present evidence that "'demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination.'" *Diamond*, 416 F.3d at 318 (quoting *Hill* 354 F.3d at 285).

A plaintiff bringing a failure to promote claim must demonstrate: (1) she is a member of a protected group; (2) she applied for the position in question; (3) she was qualified for that position; and (4) the defendant rejected her application under circumstances that give rise to an inference of unlawful discrimination. *Wesley v. Arlington Cnty*., 354 F. App'x 775, 778 (4th Cir. 2009) (citation omitted). To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) there was a causal link between the two events. *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008) (citation omitted).

The undersigned will assume for purposes of this motion that the plaintiff can establish *prima facie* cases of failure to promote and retaliation claims in regard to the promotions in 2013 and 2014. The defendants have presented evidence that a selection board whose members were independent of the City was used in the promotion decisions, and the plaintiff scored next to last for the first promotion and last for the second promotion opportunities. Accordingly, the defendants have presented legitimate, nondiscriminatory reasons for not promoting the plaintiff to these positions. Thus, the plaintiff must show that the defendants' reasons were a pretext for discrimination or retaliation to avoid summary judgment on her claims.

"A plaintiff alleging a failure to promote can prove pretext by showing that he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir.2006) (citations omitted). Relative job qualifications are assessed "based on the criteria that the employer has established as relevant to the position in question." *Id*.

The plaintiff need not have been the better qualified candidate for the position, but must show "evidence [that] indicates that [the employer's] stated reasons for promoting [the other candidate] over [the plaintiff] were a pretext for discrimination." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 269 (4th Cir. 2005).

The plaintiff argues that the City's reasons for denying her the promotions were pretextual because: (1) an Associate Degree was required for both promotions, and the male candidate that got the job did not have one; (2) the 2013 promotion opportunity required at least six years law enforcement experience, but the City lowered the experience requirements for the 2014 opportunity to three years, which made eligible certain male officers who would have otherwise been ineligible under the previous requirements; (3) the review board was not independent of the City; (4) her interview was short; and (5) the score sheets were never previously used by hiring boards (doc. 53-1, pp. 12-15).

The plaintiff first argues, "The promotional opportunity requirements made abundantly clear that all applicants must be a 'high school graduate with an Associate Degree in criminal justice or a related field . . . '; however, the applicants – all but one of which were male – failed to satisfy this prerequisite for applying, with [the plaintiff], the only female applicant, being the exception; yet a male applicant was awarded the position" (doc. 53-1, p. 13 (citing docs. 53-16, 53-17)). However, the cited exhibits, which set forth the eligibility requirements for the 2013 and 2014 promotions, go on to state as follows in the portion not quoted by the plaintiff, "or any equivalent combination of education, training, and experience" (docs. 53-16, 53-17). Accordingly, the plaintiff has failed to show that the defendants' consideration of candidates who did not have an Associate Degree was pretext for discrimination.

The plaintiff next argues that the 2013 promotion required six years of law enforcement experience, but the City lowered the requirements to three years for the 2014 promotion. She further contends that "to no surprise, the officer that was awarded the position was one of the officers whose eligibility stemmed from the change" (doc. 53-1, p. 13). However, evidence presented by the defendants shows that Ryan Davis, who received

11

the 2014 promotion, had six years and eight months of law enforcement experience at the time he put in for the 2014 promotion (doc. 57-4, p. 18).  Therefore, he met even the old requirements.  Furthermore, the other candidates also met even the old eligibility requirements:  Schreier had 21 years of law enforcement experience; Bosler had at least ten years of experience; and Anderson, a female, had 14 years of experience (*id.,* p. 9, 26, 30).[5]

The plaintiff next agues that the interview board used for the promotions was not independent because the members "were vehemently familiar with the allegations that [the plaintiff] had asserted against Henderson as a result of a newspaper publication disseminated in Abbeville regarding [the plaintiff's] allegations against the department, prior to either of [the] interviews" (doc. 53-1, p. 14).  However, as argued by the defendants, the plaintiff's contention that each of the board members knew about her allegations and was therefore disposed against her is completely speculative and unsupported by any evidence.

The plaintiff further contends that pretext is shown because her interview for the 2014 position only lasted five minutes (doc. 53-1, p. 14; doc. 53-12, pl. aff. ¶ 30). However, the plaintiff has presented no evidence that the other candidates were treated any differently and that the reason was discrimination based upon sex or retaliation for filing charges of discrimination (*see* doc. 53-12, pl. aff. ¶ 30 (stating only that "unlike the [2013] promotional opportunity, the interview process for this promotion lasted less than five minutes")).

Lastly, the plaintiff contends that the fact that score sheets were used by the interview board shows pretext because they had not previously been used (doc. 53-1, p. 14).  The plaintiff has absolutely no evidence linking the usage of the score sheets to an

---

[5]With regard to the 2013 promotions, the plaintiff had the least amount of law enforcement experience – approximately six years at the time of the promotions. Garner had 19 years, Eaton had 12, Schreier had 21, and Wilkie had eight years of law enforcement experience (doc. 57-3, pp. 3, 8, 13, 18, 24).

effort by the defendants to justify their decisions in 2013 and 2014 to select other individuals for open positions.

Based upon the foregoing, the plaintiff has failed to show that the defendants' stated reason for not promoting her was pretext for discrimination and/or retaliation in violation of Title VII. Accordingly, summary judgment should be granted on these claims.

***Breach of Contract***

In her third cause of action, the plaintiff alleges that the defendants breached the City of Abbeville's Employee Policies and Procedures Manual (doc. 24, pp. 17-18). In South Carolina, employment is presumed to be at-will, meaning that an employee may be terminated any time, for any reason, with or without cause. *Hessenthaler v. Tri–County Sister Help, Inc.*, 616 S.E.2d 694, 697 (S.C. 2005) (citations omitted). "The issue of whether an employee handbook constitutes a contract should be submitted to the jury when the issue of the contract's existence is questioned and the evidence is either conflicting or is capable of more than one inference." *Watkins v. Disabilities Bd. of Charleston Cnty.*, 444 F. Supp.2d 510, 514 (D.S.C. 2006). However, a court should resolve whether the employee handbook constitutes a contract as a matter of law when the employee handbook's policies and disclaimers, taken together, establish that an enforceable promise does or does not exist. *Id*. While an employee handbook may create an employment contract, it does so only when: "(1) the handbook provisions and procedures in question apply to the employee; (2) the handbook sets out procedures binding on the employer; and (3) the handbook does not contain a conspicuous and appropriate disclaimer." *Bishop v. City of Columbia*, 738 S.E.2d 255, 259 (S.C. Ct. App. 2013) (citations omitted). South Carolina Code Annotated Section 41-1-110 provides as follows:

> It is the public policy of this State that a handbook, personnel manual, policy, procedure, or other document issued by an employer or its agent after June 30, 2004, shall not create an express or implied contract of employment if it is conspicuously disclaimed. For purposes of this section, a disclaimer in a handbook or personnel manual must be in underlined capital

13

> letters on the first page of the document and signed by the employee. For all other documents referenced in this section, the disclaimer must be in underlined capital letters on the first page of the document. Whether or not a disclaimer is conspicuous is a question of law.

S.C. Code Ann. § 41-1-110.

The plaintiff signed four disclaimers issued by the City, thereby acknowledging that she understood that she was an at-will employee, that the employment manual did not create a contract of employment, and that the provisions of the manual were subject to change at any time (doc. 46-8, pp. 1-4; doc. 45-2, pl. dep. 120-21). The disclaimer in the City's employee manual is in underlined capital letters and is signed by the plaintiff (doc 46-8, pp. 3-4; doc. 45-11).

The plaintiff argues that summary judgment should be denied based upon the following quote from *Grant v. Mount Vernon Mills, Inc.*: "Absent a claim of illegal discrimination, an employee's status as an at-will employee is not altered by an employer's decision to give a warning to other at-will employees." 634 S.E.2d 15, 23 (S.C. Ct. App. 2006). The plaintiff apparently misconstrues the court's statement to mean that a breach of contract claim based on illegal discrimination creates an exception to at-will employment (doc. 53-1, pp. 16-17). As argued by the defendants, the reference by the court is simply to discrimination made illegal under federal and state anti-discrimination statutes.

In her amended complaint, the plaintiff alleges that the defendants breached the City's policies of "'Zero-Tolerance' . . . toward any type of harassment based in . . . sex . . . " and "that qualified individuals will be given the opportunity to progress . . . in accordance with their abilities and qualifications regardless of sex" (doc. 24, p. 17-18). However, the South Carolina Supreme Court has specifically held that "a general policy statement of nondiscrimination does not create an expectation that employment is guaranteed for any specific duration or that a particular process must be followed before an employee may be fired." *Hessenthaler,* 616 S.E.2d at 698.

The plaintiff has failed to show that the employee handbook constituted a contract that was breached by the defendants. Accordingly, summary judgment should be granted on the breach of contract claim.

### *Remaining Causes of Action*

The defendants have raised arguments in support of summary judgment on the plaintiff's causes of action for negligence, intentional infliction of emotional distress, negligent supervision and retention and negligent infliction of emotional distress, wanton and willful negligence, and wrongful discharge/constructive termination (fourth, fifth, seventh, eighth, and ninth causes of action) (*see* doc. 45-1, pp. 13-19; doc. 46-1, pp. 5-6, 13-15). The plaintiff failed to respond to any of these arguments (*see generally* doc. 53-1). Accordingly, she has abandoned these causes of action, and, as a result, summary judgment in favor of the defendants should be granted.

### **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the defendants' motions for summary judgment (docs. 45, 46) should be granted, and this case should be dismissed.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

January 10, 2017
Greenville, South Carolina