IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Angela Burris Priest,[1] | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action 8:15-2548-TMC |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| The City of Abbeville, The City | ) | |
| of Abbeville Police Department, | ) | |
| Chief of Police Neil Henderson, | ) | |
| and David McCuen, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, Angela Burris Priest ("Priest"), filed this action alleging sexual harassment; gender discrimination; breach of contract; negligence; intentional infliction of emotional distress; retaliation; negligent supervision, negligent retention, negligent infliction of severe emotional distress; wanton and willful negligence; and wrongful termination/constructive termination. (ECF No. 24 at 16–22). In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02, D.S.C., this matter was referred to a magistrate judge for pretrial handling. Before the court is the magistrate judge's Report and Recommendation ("Report") (ECF No. 62), issued January 10, 2017, recommending that the court grant the motions for summary judgment filed by defendants City of Abbeville Police Department ("APD"), City of Abbeville ("City"), and David McCuen ("McCuen") (ECF No. 45) and defendant Neil Henderson ("Henderson") (ECF No. 46). On January 26, 2017, Priest filed objections to the Report. (ECF No. 67). On February 3, 2017,

---

[1] The court notes that in many documents, including Plaintiff's resume and June 2013 EEOC charge, Plaintiff's name appears as Angela Burns or Angela Beth Burns. (ECF Nos. 45-3, 53-5, 57-3 at 2-4, and 57-4). Because Plaintiff's name has appeared consistently in the caption as "Angela Burris Priest," and no party has amended it, the court will continue to refer to Plaintiff as Angela Burris Priest.

APD, City and McCuen filed a response to Priest's objections. (ECF No. 69). On February 8, 2017, Henderson filed a response to Priest's objections. (ECF No. 70).

The recommendations set forth in the Report have no presumptive weight and the responsibility to make a final determination in this matter remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). However, the court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a timely filed, specific objection, the magistrate judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

Priest filed objections to those portions of the Report which recommend summary judgment be granted as to her first cause of action (Title VII Hostile Work Environment/Sexual Harassment), second cause of action (Title VII Failure to Promote and Retaliation) and ninth cause of action (Wrongful Termination/Constructive Termination) contained in her amended complaint.

Priest did not file objections to those portions of the Report that recommend summary judgment be granted as to the remaining claims in the third cause of action (Breach of Contract), fourth cause of action (Negligence), fifth cause of action (Intentional Infliction of Emotional Distress and Outrage), sixth cause of action (Retaliation), seventh cause of action (Negligent Supervision, Negligent Retention, Negligent Infliction of Emotional Distress) and eighth cause

of action (Wanton and Willful Negligence). Accordingly, in the absence of a timely filed, specific objection, these recommendations are reviewed only for clear error. *See Diamond*, 416 F.3d at 315.

## I.     Background

The magistrate judge detailed the facts of this action in his Report. (ECF No. 62 at 2–6). Briefly, in the amended complaint, Priest alleges that she began working for APD in 1993 as a dispatcher. (ECF No. 24 at 2). Subsequently, when the dispatch department was eliminated, she became Clerk of Court for the Abbeville Municipal Court until 2007 when, at her request, the City paid for her to become credentialed as a police officer. (ECF No. 45-2 at 2–3). Henderson was the Chief of Police of the APD from the time Priest started until February 12, 2013.[2] (ECF No. 62 at 2). He approved Priest's training and hiring as a police officer and, over the years, promoted her to Corporal and then Sergeant. *Id.* According to Priest's first Equal Employment Opportunity Commission ("EEOC") charge of discrimination, from April 1, 2009, until February 28, 2013, Henderson sexually harassed Priest by touching her, kissing her in September 2012, and questioning her about her relationships with other men. *Id.*

According to Priest's complaint, she reported Henderson's conduct to Assistant City Manager Ashley Ramey on August 27, 2009, and again in February 2010, and to her direct supervisor, Mike Eaton, on numerous occasions with no result. (ECF Nos. 24 at 4 and 62 at 2). In February 2013, Priest complained to McCuen, who had recently become the Abbeville City Manager, and detailed her allegations. (ECF No. 62 at 2–3). Following this meeting, McCuen undertook an investigation. *Id.* at 3. Henderson resigned on February 12, 2013, upon being asked to give his version of the events. *Id.* Priest took administrative leave immediately

---

[2] According to Priest, Henderson was named Chief of Police on March 9, 2004. (ECF No. 53-1 at 1).

following her February 2013 complaint to McCuen and returned to work on February 28, 2013, and accepted counseling offered by City with a mental health provider. *Id.*

Priest filed her first charge of discrimination with the EEOC on June 13, 2013, alleging that Henderson sexually harassed her from April 1, 2009 to February 28, 2013. *Id.* The EOC issued a right to sue letter on December 13, 2013. *Id.* Priest suffered an on-the-job injury[3] pursuing a suspect on June 16, 2013, remained off work due to a back injury for several weeks, and then returned to light duty. *Id.* at 4.

In June 2013, Mark Hall ("Hall") was appointed as Chief of Police. *Id.* Vacancies also opened up for the positions of Lieutenant of Investigations and Lieutenant of Patrol. *Id.* Priest applied for these positions. The application process involved candidates being interviewed and reviewed by a board of law enforcement officials who did not work for City. *Id.* The board graded each applicant by a number of factors and scored them on evaluation forms. *Id.* Priest received one of the two lowest scores and was not offered a promotion.[4] *Id.* According to Priest, John Garner and Michael Eaton were given the Lieutenant of Patrol positions and Christopher Wilkie was given the Lieutenant of Investigations position. *Id.* Each of the appointees scored higher than Priest before the interview board. *Id.*

According to Defendants, Priest did not return to work after May 8, 2014. *Id.* at 4. According to Defendants, Priest did not tell City why she went out of work on May 8, 2014, although it coincided with the date she began being treated by Abbeville Internal Medicine. (ECF No. 45-1 at 4).[5] Defendants further state that Priest provided doctors' notes for her

---

[3] Priest suffered an injury of the neck and back when she "fell off [a 4-foot] retaining wall, striking her head on the wall and landing on concrete ground below." (ECF No. 46-4).

[4] Priest scored 51. The scores of other applicants were: 62, 55, 52, and 50. (ECF No. 62 at 4).

[5] The pages of Priest's deposition cited to by defendants APD, City, and McCuen are not included in the exhibit cited by Defendants' motion for summary judgment. (ECF No. 45-1 at 4). However, the dates Priest went on leave are not in dispute.

absences, but the notes did not state the reason for her absences.  *Id*.  City placed Priest on leave pursuant to the Family and Medical Leave Act ("FMLA") until it was exhausted and then placed her on unpaid medical leave.[6]  *Id*.  After Priest's FMLA leave and accrued paid leave expired, City granted her unpaid non-FMLA leave, which was extended.  (ECF No. 45-9).  City stated in a letter dated October 13, 2014, confirming an unpaid leave extension that, "while we can extend your leave for an additional eight weeks, we cannot guarantee your job will be available when you return . . . ."  *Id*.

In July 2014, another Lieutenant position opened which Priest, who was still on medical leave, applied for.  (ECF No. 62 at 4).  Again, an independent board conducted interviews.  *Id*. at 4–5.  Ryan Davis, who scored the highest, was given the position over Priest, who scored the lowest.[7]  *Id*. at 5.

Priest filed a second charge of discrimination with the EEOC on July 7, 2014, alleging that she was denied the 2013 promotions for Lieutenant of Investigations and Lieutenant of Patrol positions in retaliation for her previous EEOC complaint.  (ECF No. 53–7).  She also alleged sexual harassment from March 1, 2013, through April 23, 2014, stating that she had been subjected to a hostile work environment by her male co-workers and Hall.  *Id*.  According to Defendants, the EEOC issued a right to sue letter on the July charge in May 2015.  (ECF No. 62 at 5).  Priest's amended complaint (ECF No. 24) does not specifically allege harassment from anyone but Henderson.  *Id.*  Hall is mentioned only in the context of promotion decisions.  *Id*.

---

[6] Priest stated that on November 11, 2014, she was on medical leave "as a result of the harassment and discrimination suffered at the hands of Henderson and the Department."  (ECF No. 53-12 at 7).
[7] Priest scored 74.  The scores of other applicants were: 103, 95, 94, and 83.  (ECF No. 62 at 4–5).

Priest filed an amended charge of discrimination with the EEOC on September 30, 2014, again alleging that she was denied the 2013 promotions based upon her previous EEOC charge.[8] (ECF No. 53-8).  She again alleged sexual harassment from March 1, 2013, through April 23, 2014.  *Id.*  In addition, in the September EEOC charge she alleged that she was denied a promotion to Patrol Lieutenant in July 2014 in retaliation for her previous EEOC charge.  *Id.*  A right to sue letter was issued on May 12, 2015.[9]  (ECF No. 53-10).

According to Defendants, Priest applied for disability retirement with the South Carolina Police Retirement System in November 2014.[10]  According to Priest, she was contacted by APD in November 11, 2014, and told to return all department-issued items.  She was informed by the South Carolina Criminal Justice Academy that her officer certification status had been pulled and that Chief Hall had signed her separation papers from the academy dated October 31, 2014. (ECF No. 52-12 at 6).  Priest was awarded disability retirement in January 2015, at which time she was separated from her employment with City, upon her request, so she could begin receiving disability retirement benefits.  (ECF No. 62 at 5–6).  According to Priest, her employment officially ended on March 3, 2015.

Priest commenced this action in state court on May 22, 2015; it was removed to federal court on June 25, 2015.  *Id.* at 6.  On July 7, 2016, defendants City, APD, and McCuen filed a motion for summary judgment.  (ECF No. 45).  On July 8, 2016, Henderson filed a motion for

---

[8] Priest stated that she filed another charge with the EEOC on October 6, 2014; however, the exhibit referenced by Priest contains only a notice of charge of discrimination dated October 6, 2014, without a copy of another actual charge of discrimination.  (ECF No. 53-9).

[9] The charge number referenced in the right to sue letter (3-14-84D, SH, RET) is the same as that on the September 30, 2014, amended charge.  (ECF Nos. 53-8 and 53-10).

[10] As the magistrate judge notes, the pages of Priest's deposition cited by Defendants City, APD, and McCuen are not included in the exhibit cited by Defendants' motion for summary judgment.  (ECF Nos. 45-1 at 6 and 45-2). However, the facts relating to the dates Priest was on leave and when she applied for and was awarded disability retirement benefits are not in dispute.  According to the Medical Board's Recommendation, Priest's primary diagnosis is "other fractures of bones," and her secondary diagnosis is "anxiety-related disorders."  (ECF No. 46-5).

summary judgment.  (ECF No. 46).  Priest filed a response to City, APD and McCuen's motion for summary judgment on August 15, 2016 (ECF No. 53).[11]

## II. Standard of Review

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.  A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). The existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1265 (4th Cir. 1996).

The party seeking summary judgment has the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the movant has made this threshold demonstration, the non-moving party may not rest on the allegations averred in her pleadings but, rather, must demonstrate that specific material facts exist that give rise to a genuine issue.  *Anderson*, 477 U.S. at 256.

---

[11] As noted by the magistrate judge, Priest did not file a response to Henderson's motion for summary judgment but referenced Henderson's motion in this response.  (ECF No. 62 at 1).  No objection was made to this finding.

### III.    Discussion

Priest contends that the magistrate judge erred by recommending summary judgment and objects to the following:

1. The R&R's disregard of the legal standard and application of the continuing violation theory;
2. The R&R's conclusion that Plaintiff failed to establish that Defendants' reasons for failing to promote Plaintiff were pretextual;
3. The R&R's failure to address Plaintiff's additional allegations of discrimination separate and distinct from those of retaliation; and
4. The R&R's conclusion that Plaintiff has abandoned her cause of action for wrongful/constructive termination.

(ECF No. 67 at 1–2).

### A.  Title VII Hostile Work Environment and Sexual Harassment

In Priest's first objection, she alleges that the magistrate judge erred in recommending summary judgment because the EEOC limitations period on filing a lawsuit does not preclude Priest from using the continuing violation theory to establish a hostile work environment claim based on sexual harassment.  She contends that proper Title VII analysis would allow Priest to use the events alleged in her first EEOC charge to support her hostile work environment claim. Priest also argues that the magistrate judge failed to consider additional allegations alleged in the body of Priest's amended complaint and attached exhibits to her response in opposition to summary judgment as instances contributing to Plaintiff's hostile work environment claim.

Title VII provides that "a federal discrimination claim brought by a private party cannot be heard by a federal district court until the EEOC has conducted an investigation and determined the validity of the claim." *Davis v. North Carolina Dep't of Corrections,* 48 F.3d 134, 138 (4th Cir. 1995) (citing 42 U.S.C. § 2000e–5(b)).  A charge must be filed with the EEOC within 300 days of the alleged unlawful employment practice. *See Citicorp Pers.-to-Pers. Fin. Corp. v. Brazell*, 658 F.2d 232, 234 (4th Cir. 1981) (citing 2000e-5(e)).  The EEOC must then

decide whether it will bring a claim in federal court or if it will issue a right-to-sue letter to the claimant, "which letter is essential to initiation of a private Title VII suit in federal court." *Id.* A plaintiff's claim with the EEOC "defines the scope of her subsequent right to institute a civil suit." *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 247 (4th Cir. 2000). Only claims "reasonably related" to those in the EEOC charge may be advanced in a subsequent civil suit. *Id. See also EEOC v. Commercial Office Products Co.,* 486 U.S. 107 (1988). Title VII requires that an action be filed within 90 days of the receipt of the right to sue letter. 42 U.S.C. § 2000e-5(f)(1).

Priest contends that in her cause of action for hostile work environment, she specifically incorporated all of the previous paragraphs alleging sexually discriminatory conduct by other members of the Abbeville Police Department. However, Priest cites to no specific paragraphs in her complaint. As admitted by Priest, her cause of action for sexual harassment mentions and alleges sexual harassment only against Henderson. (ECF Nos. 24 at 16 and 67 at 3). Paragraph 67, in her first cause of action for sexual harassment states that, "Paragraphs one through sixty-six are incorporated by reference herein." (ECF No. 24 at 16). Paragraphs one through six discuss jurisdiction and venue. *Id.* at 1–2. Paragraphs seven through sixty-six contain Priest's allegations of fact. *Id.* at 2–15. Upon thoroughly examining Priest's complaint, the court finds no allegations of sexually discriminatory conduct specifically referring to anyone other than Henderson. The only possibly applicable paragraph is ¶57, which reads:

> The Defendants have continued to subject Plaintiff to derogatory comments that serve to undermine her authority in front of fellow officers, continue to degrade Plaintiff within the Department, continue to discriminate against Plaintiff in daily activities, as well as, in denying her the opportunity to advance, all actions which result in Plaintiff being forced to continue to suffer under a hostile work environment for threat of losing her long worked for career and a stable future after more than 20 years of continuous service to the Department and the City.

(ECF No. 24 at 14).

To survive a motion for summary judgment on a claim of sexually hostile work environment in violation of Title VII, a plaintiff must show that there is a genuine issue of material fact as to whether the offending conduct was 1) unwelcome, 2) based upon her sex, 3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and 4) imputable to her employer. *Ocheltree v. Scollon Prods., Inc.,* 335 F.3d 325, 331 (4th Cir. 2003). To show that the unwelcome conduct was sufficiently severe and pervasive, Plaintiff must establish that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787 (1998) (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22 (1993)). Actionable harassment occurs when the workplace is "permeated with discriminatory intimidation, ridicule, and insult." *Harris,* 510 U.S. at 21. Title VII is not a "general civility code." *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 80 (1998). "Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe and pervasive standard." *EEOC v. Sunbelt Rentals, Inc.,* 521 F.3d 306, 315 (4th Cir. 2008). In *Ocheltree,* the Fourth Circuit explained that:

> Notably, Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at *discriminat[ion]* ... because of ... sex. Thus, a pervasively hostile or abusive atmosphere does not create a cause of action for sexual harassment under Title VII unless the plaintiff is able to show discriminatory treatment because of sex. [W]orkplace harassment, even harassment between men and women, is [not] automatically discrimination because of sex merely because the words used have sexual content or connotations. The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed. Stated

another way, "would the complaining employee have suffered the harassment had he or she been of a different gender?

*Ocheltree*, 335 F.3d 338 (internal citations omitted).

In the amended complaint, other than in reference to Henderson, Priest does not refer to any specific instance of sexual harassment, identify any specific comment, describe the content of any comment, identify any defendant as the speaker of such a comment,[12] or provide any language of the alleged "derogatory comments." (ECF No. 24). *See, e.g., Beardsley v. Webb,* 30 F.3d 524, 528–29 (4th Cir. 1994) (finding a hostile work environment when, over six months, a supervisor massaged an employee's shoulders, stated he wanted to "make out" and "have his way" with her, falsely accused her of having an affair, and asked her about her underwear, birth control, and the bodily effects of taking maternity leave). By generally alleging only "derogatory comments," without more, Priest fails to offer proof that such comments, assuming their existence, rose to a level constituting harassment or that "but for [her] gender, [she] would not have been the victim of discrimination." *Smith,* 202 F.3d at 242. Further, the conclusory allegation that Defendants "continue to discriminate against Plaintiff in daily activities…," without supporting facts, is insufficient to properly state a claim, let alone survive summary judgment. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556–57 (2007); *House v. New Castle County,* 824 F. Supp. 477, 485 (D. Md. 1993) (Plaintiff's conclusory allegations insufficient to maintain claim). The court is not required to accept Plaintiff's conclusory allegations without evidence substantiating the claim. *See Papasan v. Allain,* 478 U.S. 265, 286 (1986) (Courts need not assume the truth of legal conclusions couched as factual allegations);

---

[12] Priest's September EEOC charge alleged that "I have been subjected to an extremely hostile work environment due to the derogatory comments and suggestions I have been subjected to on a daily basis by my co-workers (male) and the new Chief, Mr. Mark Hall. I have been subjected to inappropriate and derogatory comments of a sexual nature." As with the fact section of Priest's complaint, no specific instances or examples are provided.

*Bender v. Suburban Hospital, Inc.,* 159 F.3d 186 (4th Cir. 1998).  Accordingly, even if the court were to consider allegations outside of Priest's first cause of action, Priest fails to provide adequate facts to plead a prima facie case of sexual harassment or show that there is a genuine issue of material fact regarding her claim of sexual harassment against Defendants other than Henderson.

Second, Priest contends that the magistrate judge erred by failing to consider the nature of a hostile work environment claim and quoted the Fourth Circuit:

> *Morgan* explained that a hostile work environment claim normally "occurs over a series of days or perhaps years" and certain behavior may not alone constitute acts of discrimination under Title VII.  Under *Morgan*, an incident falling within the applicable limitations period need only, in order for the continuing violation doctrine to apply, have contributed to the hostile work environment.

*Gilliam v. S.C. Dep't of Juvenile Justice,* 474 F.3d 134, 141 (4th Cir. 2007) (internal citations omitted) (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 103 (2002).  As noted by the magistrate judge, in *Morgan*, the Supreme Court held that the continuing violation theory applies to the time period for filing a charge with the EEOC.  However, the court did not extend the theory to expand the ninety day statutory limitations period for filing a lawsuit after receipt of a right to sue letter.   *Morgan*, 536 U.S. at 118.   Moreover, the magistrate judge articulated and applied the continuing violation doctrine[13] in his Report and determined that even if the continuing violation doctrine applied, the harassment alleged in Priest's second and amended EEOC charges (ECF Nos. 53-7 and 53-8) would not be part of a continuing violation

---

[13] The magistrate judge quoted *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 222 (4th Cir. 2016).  ("In determining whether an actionable hostile work environment claim exists, we look to all the circumstances, and provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.")

and are completely unrelated to the actual allegations in the amended complaint.  (ECF No. 62 at 8).

Priest's first cause of action in her amended complaint alleged that she "was constantly and continuously subjected to the unwanted advances, gender based comments, unwelcome touching, and gender based demands of her supervisor, Defendant Henderson."  (ECF No. 24 at 16).  The magistrate judge noted that Priest does not allege any discriminatory, harassing, or otherwise hostile conduct by any other person in the claim.  (ECF No. 62 at 8).  The only EEOC charge in which Priest alleged such conduct by Henderson was the charge filed in June 2013 for which a right to sue letter was issued on December 13, 2013.  (ECF Nos. 45-4 and 46-7).  As the magistrate judge notes, Priest's subsequent charges of discrimination do not allege further sexual harassment by Henderson.  Rather, in her second charge of discrimination, filed in July 2014 and amended in September 2014, Priest alleges sexual harassment by Hall and unnamed co-workers from Match 2013 through April 2014.  (ECF Nos. 53-7 and 53-8).  It is undisputed that Henderson no longer worked for City after February 2013.  (ECF No. 62 at 8–9).  Therefore, no "act contributing to the claim" occurred within the filing period for those charges. *See, e.g., Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 621 (E.D. Va. 2011) ("[I]n order for several events to qualify as part of the same hostile work environment, all of the incidents must be so significantly related to each other as to comprise one unitary and ongoing unlawful employment practice."); *Oliver v. Clinical Practices of Univ. of Pennsylvania*, 921 F. Supp. 2d 434, 445 (E.D. Pa. 2013) ("Acts that are taken by two different supervisors, acting independently, over different time periods generally demonstrate isolated events rather than a persistent, ongoing pattern of discrimination.").  Accordingly, Priest's objection is without merit.

Third, Priest contends that the magistrate judge failed to consider the sex-discriminatory acts alleged by Priest within the 300-day charge period which are in the amended complaint which, standing alone, may not constitute discrimination, but would apply under the continuing violation doctrine. *Gilliam*, 474 F.3d at 141 ("Under the continuing violation doctrine, none of the [acts falling within the 300-day period] had to be discriminatory in and of itself. It was only necessary for one of these acts to contribute to the behavior relating to the incidents that occurred prior to the limitations period."). Priest's argument is vague and unclear, and objects to no specific portion of the magistrate's Report. Further, Priest cites to no portion of her complaint in order to allege that it was not considered by the magistrate judge. However, Priest appears to be, again, referring to the continuing violation doctrine in another way. Accordingly, the court finds this argument deficient insofar as it restates Priest's arguments regarding the paragraphs preceding the causes of action in her complaint and the continuing violation doctrine, which are both addressed above.

Priest also alleges that the magistrate judge did not consider the United States Supreme Court's holding in *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73 (1986) that, "a claim of 'hostile environment' sex discrimination is actionable under Title VII." The Court further stated that, "[w]ithout question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex." *Id.* at 64. However, the magistrate judge's recommendation does not contradict this Supreme Court precedent. Rather, he recommends summary judgment because Priest's claim was not timely filed, as discussed above. (ECF No. 62 at 7–9). Accordingly, the court finds Priest's objection relating to *Meritor* to be without merit. *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1, 152 (1984) (Stating that "procedural requirements established by Congress for gaining access to the federal

courts are not to be disregarded by courts out of a vague sympathy for particular litigants.").  The first right to sue letter issued by the EEOC advised Priest that her claims were actionable and she failed to file suit within the time period provided by law.  The court agrees with the conclusion of the magistrate judge that the continuing violation theory should not be extended in this instance to revive claims barred by statute.  Accordingly, summary judgment is appropriate and Priest's objection is overruled.

### B.  Title VII Failure to Promote and Retaliation

In Priest's second objection, she contends in a conclusory fashion that the magistrate judge erred by finding that Priest failed to establish that Defendants' reasons for not promoting Plaintiff were pretextual.  (ECF No. 67 at 5–7).  She argues that the magistrate judge reviewed the evidence in isolation and failed to view each allegation of discrimination or retaliation as individual pieces of a larger picture which demonstrated continuous, systemic discrimination. Further, Priest seems to be arguing that the magistrate judge was overly focused on the fact that Plaintiff scored low in the interview process as opposed to other evidence.

Priest, by not alleging direct evidence of discrimination or retaliation proceeded under the *McDonnell Douglas* burden shifting framework.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Accordingly, the magistrate judge applied the *McDonnell Douglas* framework to analyze Priest's claim.  For the purposes of this motion, the magistrate judge presumed that Priest could establish the prima facie case of failure to promote.  He next found that, Defendants "presented evidence that a selection board whose members were independent of the City was used in the promotion decisions, and the plaintiff scored next to last for the first promotion and last for the second promotion opportunities. Accordingly, the defendants have presented legitimate, nondiscriminatory reasons for not promoting the plaintiff to these positions."  (ECF

No. 62 at 10).  Thus, to avoid summary judgment, the burden was on the plaintiff to present evidence that "'demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination.'" *Diamond*, 416 F.3d at 318 (quoting *Hill* 354 F.3d at 285).

"A plaintiff alleging a failure to promote can prove pretext by showing that he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir. 2006) (citations omitted).  Further, "[r]elative job qualifications are assessed "based on the criteria that the employer has established as relevant to the position in question."  *Id*.  The plaintiff does not need to have been the better qualified candidate for the position, but must show "evidence [that] indicates that [the employer's] stated reasons for promoting [the other candidate] over [the plaintiff] were a pretext for discrimination." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 269 (4th Cir. 2005).  As noted by Defendants, discrediting a defendants' reason for not promoting a plaintiff is not the sole way for a plaintiff to overcome a defendants' proffer of a legitimate non-discriminatory reason for making an employment decision.  A plaintiff can also meet its burden of proving pretext with strong prima facie case and other forms of circumstantial evidence sufficiently probative that a discriminatory reason more likely motivated the employer.  *See Mereish v. Walker*, 359 F.3d 330 (4th Cir. 2004) (citing *Texas Dept. of Comm. Affairs v. Burdine,* 450 U.S. 248, 256 (1981)).  However, the converse is also true; in some cases, even if a plaintiff proffers evidence that the employer's reason is pretextual, a court could nevertheless grant summary judgment.  *See Burgess v. Bowen*, 466 F. App'x 272, 277 (4th Cir. 2012) ("a prima facie case of discrimination combined with evidence of pretext might fail to sustain a jury's finding of liability, in unique situations where . . . the plaintiff

created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." (quoting *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133 (2000)).

Priest failed to demonstrate that the magistrate judge's finding was erroneous. The magistrate judge articulated and applied the correct standard. *See Heiko*, 434 F.3d at 259. Priest provides no evidence that the magistrate judge improperly failed to consider any evidence in the record. Moreover, the court notes that, pursuant to the magistrate judge's analysis of the alleged circumstantial evidence, the alleged events considered together as a whole do not add up to a persuasive argument. The magistrate judge found, (1) "equivalent combination of education, training, and experience," was also acceptable for the promotion in lieu of an Associate Degree, (2) the officer who was awarded the 2014 position of Patrol Lieutenant would have still been eligible under the unrevised experience rules,[14] (3) Priest failed to provide evidence that the interview board members knew of Priest's discrimination allegations, (4) Priest failed to establish, by alleging that her interview for the 2014 position lasted only five minutes, that other candidates were treated differently and that the reason for her interview duration was discrimination based on sex, and (5) Priest failed to provide any evidence linking the new usage of score sheets to an effort of Defendants to justify their 2013 and 2014 hiring decisions to select individuals other than Priest. (ECF No. 62 at 9–13). Even considering the above allegations together, Priest would fail to present sufficient evidence to support a jury finding or raise a

---

[14] The previous requirements were six years of law enforcement experience. The new requirement is three years of law enforcement experience. It was lowered in 2014. (ECF No. 57-17). Ryan Davis, who got the job, had six years and eight months of law enforcement experience at the time he applied for the promotion. Thus, he would have satisfied the old requirements. Furthermore, the other candidates for the 2014 promotion also met the old eligibility requirements. John Schreier had twenty-one years of law enforcement experience; Edgar Bosler had at least ten years of experience; and Tonya Anderson, a female, had fourteen years of experience. (ECF No. 57-4). With regard to the 2013 promotions, the plaintiff had the least amount of law enforcement experience – approximately six years at the time of the promotions. John Garner had nineteen years, Michael Eaton had twelve, Schreier had twenty-one, and Christopher Wilkie had eight years of law enforcement experience. (ECF No. 57-3 at 3, 8, 13, 18, 24).

reasonable inference of pretext. *See Harris v. Mayor & City Council of Baltimore*, 429 F. App'x 195, 203–04 (4th Cir. 2011) (unpublished). Accordingly, summary judgment is appropriate on Priest's failure to promote and retaliation claims. *See Anderson*, 477 U.S. 242; *Celotex*, 477 U.S. 317.

### C. Title VII Gender/Sex Discrimination

In Priest's third objection, she alleges that the magistrate judge failed to address the legal standard of the Fourth Circuit relating to establishing a prima facie case of sex discrimination in the workplace. (ECF No. 67 at 7). She argues that in addressing her claim, the magistrate judge should have applied the test articulated by the Fourth Circuit in *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004). However, Priest has failed to show that the magistrate judge's analysis was erroneous. The Fourth Circuit applies several prima facie tests when analyzing Title VII discrimination claims which depend on the cause of action and facts of the case. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002).

The "plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit." *Smith,* 202 F.3d at 247. "The contents of each claim in a complaint must bear a relation to the earlier EEOC charges or the plaintiff risks dismissal for failure to exhaust his administrative remedies." *Lewis v. Norfolk S. Corp.*, 271 F. Supp. 2d 807, 812 (E.D. Va. 2003). Priest's second cause of action alleging "gender/sexual discrimination" encompasses paragraphs 71 through 76 in her complaint. (ECF No. 24 at 16–17). Paragraphs 72 through 73 arise from Priest's allegations in her first EEOC charge relating to Henderson,[15] and are thus time-barred due to the

---

[15] Except for the final allegation in Paragraph 73, which is part of her failure to promote claim, addressed below. (ECF No. 24 at 17).

complaint being filed well over 90 days after issuance of the first right to sue letter from the EEOC.[16]

Paragraphs 74 through 76 allege that male candidates were improperly promoted over Priest.  (ECF No. 24 at 16).  These paragraphs were understandably interpreted by the magistrate judge to constitute a failure to promote claim.  (ECF No. 62 at 9–13).  Accordingly, the magistrate judge articulated and correctly applied the appropriate prima facie test for failure to promote.[17]  *See, e.g., McLaughlin v. CSX Transportation, Inc.*, No. 4:15-CV-00245-RBH, 2016 WL 5424908, at *6 (D.S.C. Sept. 29, 2016) (applying the failure to promote test to an allegation of an employee that employer refused to promote her because of her gender).  In her objection, Priest cited *Gerner v. County of Chesterfield*, in which the Fourth Circuit stated, "Title VII prohibits an employer from 'discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex.'  To establish a prima facie case of gender discrimination, a plaintiff must show: '(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action . . .; and (4) that similarly-situated employees outside the protected class received more favorable treatment.'"  *Gerner v. County of Chesterfield*, 674 F.3d 264, 266 (4th Cir. 2012) (internal citations omitted).  These elements are commonly used by courts in the Fourth Circuit as a general discriminatory disparate treatment test when more specific tests, such as for hostile work environment, retaliation, failure to promote, discriminatory denial of training, do not

---

[16] The fact that claims arising from Priest's first EEOC charge relating to Henderson were untimely was addressed and made clear by the magistrate judge.  (ECF No. 62 at 7–9).

[17] "To make out a prima facie case for failure to promote, Plaintiff must show that (1) she is a member of a protected group; (2) she applied for the promotion; (3) she was qualified for the promotion; and (4) Defendant failed to promote her under circumstances that give rise to an inference of unlawful discrimination."  *McLaughlin v. CSX Transportation, Inc.*, No. 4:15-CV-00245-RBH, 2016 WL 5424908, at *6 (D.S.C. Sept. 29, 2016) (citing *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005)).

apply.[18]  *Compare Gerner*, 674 F.3d at 266 (applying the *White* test to the plaintiff's allegation that the defendant did not offer her the same "sweetheart" severance package it offered her similarly situated male counterparts when it sought to terminate the males' employment), *and Addison v. CMH Homes, Inc.*, 47 F. Supp. 3d 404, 419 (D.S.C. 2014) (applying the *White* test to allegations of discriminatory denial of transfer and to alleged discriminatory less favorable treatment by employer), *and Jenkins v. City of Charlotte*, C.A. No. 3:03-44, 2005 WL 1861728, at *8 (W.D.N.C. July 26, 2005) (applying the *White* test to the plaintiff's alleged disparate wages claim), *with McLaughlin*, 2016 WL 5424908 (articulating prima facie elements used by the Fourth Circuit to analyze hostile work environment, discriminatory denial of training, and failure to promote claims), *and Addison*, 47 F. Supp. 3d 404, 419–428) (articulating prima facie elements of discriminatory discharge, hostile work environment, disparate impact, and retaliation).   Examining Priest's entire complaint, Priest fails to state a claim of disparate treatment which would trigger the application of the *White* test and fails to show that the magistrate judge applied an improper prima facie test to her gender/sex discrimination charge.

Finally, if the court were to consider Priest's allegations in paragraph 57 from her fact section,[19] in light of the *White* prima facie disparate treatment test, Priest's gender/sex discrimination claim would still fail to survive Defendants' motion for summary judgment.  In that paragraph, she states in a conclusory fashion that Defendants "continue to discriminate against Plaintiff in daily activities, as well as, in denying her the opportunity to advance . . . ." (ECF No. 24 at 14).  Defendants' alleged denial of Priest's opportunity to advance was addressed

---

[18] The *White* test, or a modified version of it, is also commonly used by courts to analyze a prima facie case of discriminatory discharge.  *See Addison*, 47 F. Supp. 3d at 419–20; *Talent v. Comm'r of Pub. Works*, No. 2:12-CV-0622-DCN, 2014 WL 971747, at *6 (D.S.C. Mar. 11, 2014).

[19] Pursuant to paragraph, 71 of Priest's second cause of action, which incorporates all previous paragraphs by reference.  (ECF No. 24 at 16).

adequately by the magistrate judge in his failure to promote analysis.[20]  Priest's bare accusation

that she was discriminated against by co-workers or supervisors, without more detailed facts or

support in the record as to what the alleged discrimination encompassed, does not suffice to

establish that she suffered adverse employment action or that other similarly situated employees

outside of the protected class were treated differently from her.  *See, e.g., Addison*, 47 F. Supp.

3d at 423 ("Generally, to be similarly situated and thus permit a valid comparison, the employees

outside the protected class must have dealt with the same decision maker, been subject to the

same standards, and engaged in the same conduct without mitigating circumstances that would

distinguish their conduct or the employer's treatment of them for it.") (citing *Mitchell v. Toledo*

*Hosp.,* 964 F.2d 577, 583 (6th Cir.1992)).  Accordingly, even applying the *White* test to Priest's

cause of action, the result would be the same.  Accordingly, Priest's third objection is overruled.

### D.  Waiver of Wrongful/Constructive Termination Claim[21]

In her fourth objection, Priest contends that the magistrate judge erred by finding that

Priest abandoned her constructive termination claim because she set forth evidence of her

constructive termination in her response to Defendants' motion for summary judgment.  (ECF

Nos. 53-1 at 15 and 67 at 8).

The party seeking summary judgment has the initial burden of demonstrating to the court

that there is no genuine issue of material fact.  *Celotex Corp*, 477 U.S. at 325.  Once the movant

has made this threshold demonstration, the non-moving party may not rest on the allegations

---

[20] Furthermore, as Defendants noted, "Plaintiff has failed to identify anyone similarly situated who was treated differently than she was.  If [Priest] was referring to the males that got the promotions instead of her, the Defendants pointed out that the males scored higher than Plaintiff in the interviews.  Plaintiff has not offered any evidence this explanation is pretextual."  (ECF No. 69 at 5).

[21] Priest did not allege discriminatory discharge or constructive discharge pursuant to Title VII.  *See Addison v. CMH Homes, Inc.,* 47 F. Supp. 3d 404, 419 (D.S.C. 2014); *Jenkins*, 2005 WL 1861728, at *10.

averred in her pleadings but, rather, must demonstrate that specific material facts exist that give rise to a genuine issue. *Anderson*, 477 U.S. at 256.

In their motion for summary judgment, Defendants argued that South Carolina follows the general theory of at-will employment and, thus, an at-will employee may be terminated at any time for any or no reason with or without cause. *Mathis v. Brown & Brown of South Carolina, Inc.*, 689 S.E.2d 773 (S.C. 2010). Further, Defendants cited the public policy exception but noted that it is not extended to situations in which the employee has an existing statutory remedy for wrongful termination (as is the case here with Title VII). (ECF No. 45-1 at 18–19). Priest did not respond to or refute Defendants' arguments in her response, stating only the following:

> [O]n November 11, 2014 . . . while out pursuant to the Family Medical Leave Act, and as a result of the mental anguish Priest suffered due to years of harassment and discrimination while still employed with the Department, Priest received a call from Lieutenant Christopher Wilkie informing her that she must return all Department issued equipment in her possession which was immediately followed by notification being sent to Priest that her class I officer certifications had been withdrawn. (Ex. 11, Priest Affidavit).

(ECF No. 53-1 at 15). Priest fails to respond to any of the allegations raised by Defendants in their motion for summary judgment, including Defendants' assertion that City separated Priest from employment at Priest's request so she could begin receiving disability benefits. (ECF No. 45-1). Rather, Priest merely restates facts from her amended complaint. (ECF No. 24 at 15). "The failure of a party to address an issue raised in summary judgment may be considered a waiver or abandonment of the relevant cause of action." *Eady v. Veolia Transp. Servs., Inc.*, 609 F. Supp. 2d 540, 560–61 (D.S.C. 2009) (citing *Jones v. Danek Medical, Inc.,* 1999 WL 1133272 at *3 (D.S.C. October 12, 1999)). Because Priest failed to respond to or refute Defendants' argument regarding her wrongful termination cause of action, there is not sufficient evidence in

the record to support a jury finding in favor of Priest.  Accordingly, Priest's objection is overruled.

### E.  Remaining Claims

As noted, Priest did not file objections to those portions of the Report that recommend summary judgment be granted as to the those claims set forth in the third cause of action (Breach of Contract), fourth cause of action (Negligence), fifth cause of action (Intentional Infliction of Emotional Distress and Outrage), sixth cause of action (Retaliation), seventh cause of action (Negligent Supervision, Negligent Retention, Negligent Infliction of Emotional Distress) and eighth cause of action (Wanton and Willful Negligence) in the amended complaint.  The court has thoroughly reviewed the record and finds the recommendation of the magistrate judge as to these claims is not clearly erroneous or contrary to law.  Accordingly, summary judgment is granted as to these causes of action.

### IV.    Conclusion

After a thorough review of the Report and the entire record in this case, in accordance with the standards set forth above, the court adopts the magistrate judge's Report (ECF No. 62) and incorporates it herein.  Accordingly, City, McCuen and APD's motion for summary judgment (ECF No. 45); and Henderson's motion for summary judgment (ECF No. 46) are **GRANTED**.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

March 30, 2017
Anderson, South Carolina

23